IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL S.,[1]

                                Plaintiff,                      Civ. No. 6:17-cv-01315-MC

v.                                                          **OPINION AND ORDER**

**NANCY A. BERRYHILL**, Acting
Commissioner of Social Security

                                Defendant.
_____

**MCSHANE, Judge:**

      Plaintiff Michael S. brings this action for judicial review of the Commissioner of Social Security's ("Commissioner") decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons that follow, the Commissioner's final decision is REVERSED and this matter is REMANDED for further proceedings consistent with this opinion.

      Plaintiff was 37 years old on his alleged onset date and 43 years old at the time of his administrative hearing. Tr. 368, 400.[2] He has a tenth-grade education and, until 2009, had a

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental parties in this case.
[2] "Tr." refers to the Transcript of the Social Security Administrative Record, ECF No. 8, provided by the Commissioner.

Page 1 – OPINION AND ORDER

consistent work history as a carpenter. Tr. 388, 544. In September 2009, Plaintiff was hospitalized for psychosis. Tr. 403, 646. On March 19, 2013, Plaintiff was civilly committed to the Lane County Mental Health Division because he was "suffering from a mental disorder, [and was] a danger to others . . . for a period not to exceed 180 days." Tr. 508; *see also* Tr. 646.

Shortly thereafter, Plaintiff applied for DIB and SSI on March 29, 2013, alleging disability beginning August 6, 2009. Tr. 166. Plaintiff alleged disability due to schizophrenia, psychosis, paranoia, and other functional psychotic disorders. *See* Tr. 398–99, 400, 410. Both claims were denied initially and upon reconsideration. Tr. 166, 398–99, 420–21. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") and appeared for a hearing on August 28, 2015. Tr. 166, 360–96. The ALJ denied Plaintiff's applications in a written decision in September 2015. Tr. 166–77. Plaintiff sought review from the Appeals Council, which was denied, rendering the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review.

## STANDARD OF REVIEW

A reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, a court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests upon the claimant at steps one through four, and with the Commissioner at step five. *Id.*; *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner must demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is disabled. *Id.* If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*; *see also Bustamante*, 262 F.3d at 953–54.

In the present case, the ALJ found that Plaintiff was not disabled. At step one, although the ALJ found that Plaintiff had engaged in substantial gainful activity in 2010 and 2012, there was a continuous 12-month period after 2012 that the ALJ's decision evaluated. Tr. 168–69. At step two, the ALJ found Plaintiff's history of schizophrenia a severe impairment. Tr. 169. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the listings. Tr. 170; 20 C.F.R. Part 404, Subpart P, Appendix 1.

Prior to step four, the ALJ determined that Plaintiff's RFC allowed a full range of work at all exertion levels with the following limitations: [Plaintiff] is limited to simple, repetitive, routine tasks that involve no more than occasional interaction with co-workers or the general public. Tr. 171. At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a carpenter. Tr. 175. At step five, the ALJ found that, based on Plaintiff's age, education, work experience and RFC, jobs existed in significant numbers in the national economy such that Plaintiff

could sustain employment despite his impairments. Tr. 176. Specifically, the ALJ found Plaintiff could perform the representative occupations of: mail clerk, *Dictionary of Occupational Titles* ("*DOT*") #209.687-026; information router, *DOT* #222.587-038; and electronics worker, *DOT* #726.687-010. Tr. 176. As a result, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. Tr. 177.

Plaintiff contends the ALJ erred in four respects. First, he argues the ALJ failed to supply germane reasons for rejecting the opinion of Plaintiff's mental health treatment providers. Pl.'s Op. Br. 6–14. Second, Plaintiff contends the ALJ failed to provide clear and convincing reasons to reject his subjective symptom testimony. *Id.* at 14–16. Third, Plaintiff asserts the refusal to grant his request for a psychological consult constituted a failure to develop the record. *Id.* at 16–17. Finally, Plaintiff argues the ALJ failed to meet his burden at step five. *Id.* at 17–18. I address each contention in turn.

## I. Mental Health Treatment Providers

Plaintiff first contends that the ALJ improperly discounted the opinion testimony of Bonny Barr, psychiatric-mental health nurse practitioner ("PMHNP"), and Benjamin Yoder, qualified mental health associate ("QMHA"), who co-signed a functional assessment of Plaintiff in July 2015 (the "Barr-Yoder opinion"). *See* Tr. 1204–13. In the assessment, the mental health professionals diagnosed Plaintiff with schizophrenia and assessed his prognosis as "poor." Tr. 1212. They further assessed that Plaintiff was, *inter alia*, markedly limited in his ability to: understand and remember detailed instructions; carry out detailed instructions; maintain concentration for extended periods; perform activities within a schedule and maintain regular attendance; sustain an ordinary routine without special supervision; and complete a normal workday without interruptions from psychologically based symptoms. Tr. 1210–11. Finally, they

opined that Plaintiff met the paragraph C criteria of Listing 12.03: Schizophrenic, Paranoid and Other Psychotic Disorders. Tr. 1213; *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (effective Aug. 12, 2015 through May 23, 2016).[3] At the hearing, the ALJ conceded that, if accepted, the opinion would compel a finding of disability under the Act. Tr. 393. Ultimately, the ALJ assigned "little weight" to the Barr-Yoder opinion. Tr. 173.

At the time of the ALJ's decision, the opinions of Plaintiff's mental health providers were considered "other medical sources." *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016); *see also* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (effective September 3, 2013 through March 26, 2017).[4] "Other Sources" cannot establish the existence of a medically determinable impairment. SSR 06-03p, *available at* 2006 WL 2329939, at *2. However, "depending on the facts of the case . . . an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the opinion of a treating source." *Id.* at *5. An ALJ considers several factors when evaluating the opinion of such sources, including: (1) length of relationship and frequency of contact; (2) consistency with other evidence; (3) quality of the source's explanations; (4) any specialty or expertise related to impairment; and (5) any other factors tending to support or refute the opinion. *See* SSR 06-03p; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ may nevertheless reject an "other source" opinion if the ALJ provides

---

[3] Effective January 17, 2017, the Commissioner made substantial revisions to the listings for evaluating mental disorders. 81 Fed. Reg. 66138 (Sept. 26, 2016). Those revisions do not apply in this appeal because "[f]ederal courts . . . review [the] final decisions [of the Commissioner] using the rules that were in effect" at the time the decision under review was issued. *Id.* at 66138 n.1; *see also Tammy J. v. Comm'r of Soc. Sec.*, No. 6:17-cv-01170-AA, 2018 WL 3814295, at *2 n.3 (D. Or. Aug. 10, 2018).

[4] Effective March 27, 2017, the scope of "acceptable medical sources" was broadened to include, *inter alia*, "licensed advanced practice registered nurses," such as PMHNP Barr. 20 C.F.R. §§ 404.1502, 416.902; 82 Fed.Reg. 5844-01, *available at* 2017 WL 168819, at *5863, *5873 (Jan. 18, 2017); *see also Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) (as amended) (noting that the prior version of the "Social Security regulations provide an out-dated view that consider a nurse practitioner as an 'other source.'"). As noted, however, the updated regulations do not apply to this appeal.

"germane reasons" for doing so. *Lambert v. Colvin*, No. 3:16-cv-00512-MC, 2017 WL 3234385, at *3 (D. Or. July 31, 2017) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)).

The ALJ found the Barr-Yoder opinion was "problematic for multiple reasons."[5] Tr. 173. First, the ALJ took issue with the fact that the opinion's onset date "pre-date[d] the commencement of [Barr and Yoder's] treating relationship by four years." *Id.* The ALJ noted that the lack "of first-hand clinical observation" from 2009 to 2013 made "the factual basis for their conclusions" unclear. Tr. 173. The Commissioner argues this was proper because "'[a]fter the fact' opinions are not reliable." Def.'s Br. 6 (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)). However, the Ninth Circuit later clarified that an ALJ may not reject an opinion simply because it assesses limitations prior to the provider's treating relationship. *See Lester v. Chater*, 81 F.3d 821, 832 n.10 (9th Cir. 1995), *as amended* (Apr. 9, 1996) ("*Vincent* . . . does not stand for the proposition that the Commissioner is entitled to reject [an] opinion, merely because the onset date of disability was before the first date on which the psychologist saw the claimant."). Indeed, *Lester* explained that the "[d]iagnosis of a claimant's condition can properly, of course, occur after the onset of the impairment." *Id.* (citations omitted). Further, the ALJ's rejection of Plaintiff's mental health treatment providers because they did not personally observe Plaintiff from 2009 through 2013 is particularly puzzling given the fact the ALJ assigned "significant weight" to the State agency consultants who *never* personally observed Plaintiff. *See Lester*, 81 F.3d at 832 ("the ALJ noted that Dr. Taylor's conclusions were based on 'limited observation' of the claimant. While this would be a reason to give less weight to Dr. Taylor's opinion than to the opinion of a treating physician, it is not a reason to give preference to the opinion of a doctor who has *never* examined

---

[5] The Commissioner's arguments regarding the Barr-Yoder opinion do not precisely parallel the ALJ's reasoning, mischaracterize portions of the ALJ's decision, and raise several *post hoc* rationales not articulated by the ALJ. The Court, as it must, however, reviews only the reasoning supplied by the ALJ. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (reviewing courts "are constrained to review the reasons the ALJ asserts") (citation omitted).

the claimant." (emphasis in original)); *see also Knight v. Berryhill*, 2017 WL 3953950, at *5 (E.D. Cal. Sept. 8, 2017). As such, the fact that a portion of the Barr-Yoder opinion "predated" the mental health professionals' treating relationship was not a germane reason to reject the opinion.

The ALJ also rejected the Barr-Yoder opinion because past "treatment records did 'not corroborate the level of psychological disturbance cited by Mr. Yoder and Ms. Barr.'" Def.'s Br. 8 (citing Tr. 173). The ALJ cited a chart note, stating that "[j]ust two months after [Plaintiff's] involuntary commitment, he told a counselor that he believed his medications were 'helpful.'" Tr. 173 (citing Tr. 810). Significantly, the ALJ's citation is to a chart note not written by either PMHNP Barr or QMHA Yoder. *See* Tr. 811. Moreover, although Plaintiff did state at the appointment he "believe[d] his medications [had been] helpful," an ALJ may not selectively rely on isolated treatment notes; rather, medical opinions "must be read in context of the overall diagnostic picture" they draw. *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person . . . makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). At the same appointment, Plaintiff also explained "this whole mental health illness thing has been tough over the past couple of years" and that he was "scared" to attempt to "work again after landing in the hospital after going to back to work." Tr. 810. Indeed, just a week and a half later, QMHA Yoder listed as a treatment goal to "[d]evelop and use a medication regimen . . . [to] decrease the impact of [Plaintiff's] paranoia *from 'severe' to 'moderate*[.]'" Tr. 811 (emphasis added). A longitudinal goal of reducing Plaintiff's paranoia from "severe" to "moderate" over the course of a calendar year does not undermine the conclusions of PMHNP Barr and QMHA Yoder; nor does the other unremarkable treatments notes the ALJ cites. *Hawver v. Colvin*, No. 3:15-cv-00896-SI, 2016 WL 3360956, at *5 (D. Or. June 10, 2016) (rejecting ALJ's reliance on treatment notes indicating the claimant's condition was

"stable," that his hallucinations are "fairly well controlled," and that his "mood appears improved," and holding such purported conflicts were not a "germane reason" to discredit treating mental health professionals). Indeed, the Ninth Circuit has repeatedly reiterated that ALJ's should exercise caution relying on purported improvement in mental health context:

> As we have emphasized while discussing mental health issues, it is error to reject [evidence] merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

*Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). As such, the unremarkable treatment records relied upon by the ALJ do not constitute a "germane reason" to reject the conclusions of PMHNP Barr and QMHA Yoder.

Next, the ALJ seemed to indicate Plaintiff had a motive of secondary gain based on a treatment note that the ALJ described as Plaintiff telling his provider "any wage-earning activity [would] undermine his SSDI claim." Tr. 173 (citing Tr. 780). The ALJ's reasoning is erroneous for at least two reasons. First, the ALJ mischaracterized the record. In the very same sentence of the treatment note—written just two months after Plaintiff's release from involuntary commitment—Plaintiff prefaced the statement, explaining he was "very wary of taking on any work responsibilities [because he felt] that work stresses precipitated his mental health crises[.]" Tr. 780. Viewed in context, Plaintiff's statement that he was concerned that "wage-earning activities" could cause another episode of decompensation requiring involuntary commitment *and* could potentially undermine his disability claim was justified. Second, even assuming *arguendo* Plaintiff had secondary gain motivations, it is unclear how such a motivation undermines the opinion of PMHNP Barr and QMHA Yoder. In other words, Plaintiff's subjective motivations for

working are unrelated—and therefore not "germane"—to the findings, treatment plan, clinical conclusions, and ultimate opinion of PMHNP Barr and QMHA Yoder. As such, the ALJ's speculation regarding secondary gain did not constitute a "germane reason" to reject the Barr-Yoder opinion.[6]

Finally, the Commissioner relies on Plaintiff's work history, which she argues "directly contradicted the Barr-Yoder opinion" that plaintiff had been disabled since 2009. Def.'s Br. 7. Conflicts between an opinion and a claimant's "work history [can] constitute a germane reason for discounting" other source evidence. *Henderson v. Comm'r, Soc. Sec. Admin.*, No. 6:17-cv-00481-HZ, 2018 WL 2102401, at *10 (D. Or. May 4, 2018). Here, Plaintiff's substantial gainful employment in 2010 and 2012 is plainly inconsistent with the Barr-Yoder opinion's conclusion that Plaintiff was disabled beginning in 2009. This was a germane reason to assign "little weight" to the opinion. *See Pourier v. Colvin*, No. 2:14-cv-00478-AA, 2015 WL 4507438, at *4 (D. Or. July 22, 2015) ("An inconsistency with the record is a germane reason to discount the opinion of a non-acceptable medical source.") (citing *Bavliss v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir. 2005)).

In his reply, Plaintiff concedes that he was employed in 2010 and 2012, but nevertheless argues "[a]lthough the ALJ may correctly reject [the Barr-Yoder opinion's] onset" date of 2009, that should not be a basis to reject the opinion's "functional limitations after they began treating

---

[6] The Commissioner's argument regarding Plaintiff's "decision to stop taking medication for a year" prior to his decompensation and civil commitment also fails. Tr. 173; *see also* Def.'s Br. 8. Indeed, the regulations the Commissioner cites—20 C.F.R. §§ 404.1529(c)(iv), 416.1530(a)—arguing the ALJ was "required" to consult do not relate to the evaluation of medical opinion evidence. Instead, those regulations discuss how the Commissioner evaluates symptom testimony and the requirement that claimants must follow their prescribed treatment—and not the factors an ALJ must use when evaluating medical opinion evidence. As discussed *infra* at 13–14, the clinical observations and conclusions of PMHNP Barr and QMHA Yoder largely occurred during the period when Plaintiff was generally compliant with his medications and still suffered from debilitating symptoms. Moreover, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Garrison*, 759 F.3d at 1018 n.24 (quotation marks omitted).

Page 9 – OPINION AND ORDER

him in 2013 as those limitations are well supported in the record." Pl.'s Reply 2. The argument is unavailing. Although Plaintiff offers a plausible alternative interpretation of the record, by its terms SSR 06-03p permits ALJs to accept or reject medical opinion evidence based on, among other factors, "[h]ow consistent [a] medical opinion is with the record as a whole." SSR 06-03p *at 3; *see also Amaral v. Berryhill*, 707 Fed. Appx. 487, 488 (9th Cir. Dec. 21, 2017) ("[The claimant] essentially advocates for the Court to reweigh the medical evidence and arrive at a different conclusion than the ALJ; however, she has not established that the ALJ failed to support this decision with substantial evidence or committed a legal error, as required to reverse the ALJ's decision."). As discussed above, the Barr-Yoder opinion was inconsistent with Plaintiff's substantial gainful work in 2010 and 2012. Thus, the ALJ was free to reject the opinion in its entirety based on that inconsistency with the record. *See Dale*, 823 F.3d at 944 ("Typically, of course, the reason for discounting an 'other' source applies to the entire testimony of the witness."); *see also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (rejecting entirety of other source opinion, in part, because it was two years beyond the relevant time period).

In sum, the ALJ provided a germane reason supported by substantial evidence in the record to discount the Barr-Yoder opinion.

## II. Subjective Symptom Testimony

Plaintiff next argues the ALJ failed to provide clear and convincing reasons for discounting his subjective symptom testimony. Pl.'s Op. Br. 14–16. An ALJ may only reject testimony regarding the severity of a claimant's symptoms if she offers "clear and convincing reasons" supported by "substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). The ALJ, however, is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. §

423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted). In assessing credibility, the ALJ "may consider a range of factors." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors include "ordinary techniques of credibility evaluation," a plaintiff's daily activities, objective medical evidence, treatment history, and inconsistencies in testimony. *Id.* An ALJ may also consider the effectiveness of a course of treatment and any failure to seek further treatment. *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996); *Molina*, 674 F.3d at 1113.

Here, the ALJ failed to offer clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.

The Commissioner principally relies on the ALJ's observation that Plaintiff's symptoms "can reasonably ameliorated by appropriate medication." Def.'s Br. 3 (citing Tr. 172). The Commissioner then correctly notes that "[i]mpairments that can be controlled effectively with [treatment] are not disabling." *Id.* (bracketing in original) (citing *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)). In support of the argument that Plaintiff's impairments were effectively controlled, the Commissioner relies on: (1) Plaintiff's ability to work after his alleged onset date in 2009 through 2013; (2) Plaintiff's decompensation and civil commitment occurring only after Plaintiff's "decision" to stop taking his medication; and (3) various treatment records showing "improvement." Def.'s Br. 4. I am unpersuaded.

First, it does not appear that the ALJ in fact discounted Plaintiff's testimony due to his work history and I may not affirm the Commissioner based on reasoning the ALJ did not invoke. *Compare* Tr. 171–72 (finding Plaintiff "not entirely credibly"), *with* Tr. 73 (discounting the Boder-Yarr opinion based, in part, on Plaintiff's "recent work history"); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law

Page 11 – OPINION AND ORDER

require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). Moreover, even if the Court were to entertain the argument, the justification fails to account for Plaintiff's symptom allegations after 2012 when he did not engage in any substantial gainful activity. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.") (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

Second, as previously noted regarding Plaintiff's decompensation after his "decision" to cease his medications, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Garrison*, 759 F.3d at 1018 n.24 (citation and quotation marks omitted). Indeed, reviewing the same treatment note the Commissioner relies on to suggest that Plaintiff "decided" to stop taking his medication in context is instructive: at the appointment, Plaintiff reported that he believed he was "the victim of a broad based" harassment, that people were "following him [and] duck[ing] behind trees when he turn[ed]" around, and at one point during the exam Plaintiff "want[ed] to check [the medical staff's] identification to verify who they [were.]" Tr. 645–48. Thus, it becomes apparent that to the extent that Plaintiff had issues regarding compliance with his medication in 2013, it was a symptom of his mental health impairments and paranoia. *See id.*; *see also* Tr. 1039 ("[Plaintiff] is alert and focused on feeling trapped and paranoia about several topics including . . . that his medication that may be 'poisoned.'"); Tr. 1178 ("[Plaintiff] complains his meds are poison . . . ."). This was not a clear and convincing reasons to discount Plaintiff's subjective symptom testimony.

Third, an ALJ may not cherry-pick isolated instances of improved psychological symptoms when the record as a whole reflects longstanding psychological disability. *Ghanim*, 763 F.3d at

1164; *see also Garrison*, 759 F.3d 1017 ("it is error for an ALJ to pick out a few isolated instances of improvement"). Here, the Commissioner directs the Court to various treatment notes in support of her argument that Plaintiff improved subsequent to his civil commitment and a statement in support of Plaintiff's disability claim from Susan Rauchfuss's, R.N. Def.'s Br. 4. The Commissioner mischaracterizes the record.

For example, the Commissioner relies on a March 2013 report that Plaintiff was "cooperative, with an improved affect and no overt psychosis." *Id.* (citing Tr. 651). Approximately a month later, however, Plaintiff reported an "[i]ncrease in delusional thought content," tr. 669, and had to be instructed to not "obstruct his door" with a chair at his temporary housing for the recently discharged homeless. Tr. 672. The Commissioner next cites a June 2013 treatment note in which Plaintiff reported that his medications were "helpful." Tr. 810. However, later that same month, Plaintiff presented as "out of it" with a "flat tone and slow respon[se] to questions," tr. 814, and needed to lie down "when feeling overwhelmed," tr. 816. At a follow up appointment in August 2013, PMHNP Barr assessed that although Plaintiff's concentration was appropriately intact, his affect was blunted and his mood remained depressed. *Compare* Tr. 848, *with* Tr. 724 (April 2013: presenting with a constricted affect and depressed mood), *and* Tr. 751 (May 2013: presenting with a blunted affect and appropriate mood).

A thorough review of the record reveals that Plaintiff's symptoms did not improve, but rather waxed and waned throughout 2013 and 2014. *See* Tr. 878, 984, 1005, 1122. By March 2014, the medical records reveal that Plaintiff presented with an anxious mood, limited insight, and complaints about the side effects of his medications. Tr. 959–60. Less than a month later, he presented with a blunted affect, depressed mood, and limited insight. Tr. 920. He also reported difficulty "concentrat[ing]" and impaired executive functions "nearly every day." Tr. 922; *see also*

Tr. 1125 (May 2014: presenting with an appropriate affect, but depressed mood and disheveled appearance); Tr. 1105 (June 2014: presenting with an appropriate affect and appropriate mood); Tr. 1057 (August 2014: presenting with a constricted affect and irritable mood); Tr. 1195–96 (November 2014: presenting with a constricted affect, irritable mood, and disheveled appearance; and PMHNP Barr noting that Plaintiff "was significantly more guarded and suspicious than in [the] recent past").

By the beginning of 2015, Plaintiff's mental health impairments continued on a downward trend, which the ALJ's decision glossed over. *See, e.g.,* Tr. 1277–78 (February 2015: presenting with impaired concentration, a blunted affect, and irritable/angry/hostile mood as well as "high levels of paranoia" and hallucinations). In May 2015, mental health professionals Barr and Yoder conducted a home visit where they assessed impaired concentration. Tr. 1252. They also assessed that Plaintiff's recent and remote memory were impaired. *Id.* PMHNP Barr noted that Plaintiff would not shake his hand and "again stated . . . that he doesn't like [Barr] to come here [because] he doesn't like others 'messing in [his] life.'" Tr. 1252–53. Reading Plaintiff's "[r]eports of 'improvement' in the context of [his] mental health issues," I do not find this was a clear and convincing reason to discount his subjective symptom testimony. *Garrison*, 759 F.3d at 1017; *Ghanim*, 763 F.3d at 1164 (ALJ may not cherry-pick isolated instances of improved psychological symptoms when the record as a whole reflects longstanding psychological disability).

### III. Duty to Develop the Record

Plaintiff's challenges the ALJ's denial of his request for a psychological consultative examination. Pl.'s Op. Br. 16–17. Although the claimant is ultimately responsible for providing sufficient medical evidence of a disabling impairment, it has "long [been] recognized that the ALJ

is not a mere umpire at [an administrative hearing], but has an independent duty to fully develop the record[.]" *Higbee v. Sullivan,* 975 F.2d 558, 561 (9th Cir. 1992) *as amended* (Sept. 17, 1992) (per curiam). "In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001) (citing *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001)). The ALJ's duty to develop the record is heightened where the claimant may have mental health issues. *See Tonapetyan*, 242 F.3d at 1150. However, an ALJ's duty to develop the record is triggered (1) when there is ambiguous evidence or (2) when the record is inadequate to allow for proper evaluation of the evidence. *Mayes*, 276 F.3d. at 459–60. "One of the means available to an ALJ to supplement an inadequate medical record is to order a consultative examination[.]" *Reed v. Massanari,* 270 F.3d 838, 841 (9th Cir.2001) (citing 20 C.F.R. §§ 404.1519, 416.919).

Specifically, Plaintiff argues, the record required further development because the "last treatment record from an 'acceptable medical source' is the hospital discharge summary" from April 2013. Pl.'s Op. Br. 17 (citing Tr. 648). The Commissioner responds that the ALJ's rejection of the request was proper because the ALJ found the record "already contains sufficient evidence to make a disability determination and that an additional evaluation is not necessary." Def.'s Br. 10 (citing Tr. 166). I disagree.

In *Tonapetyan*, although the ALJ "did not specifically find that the evidence of [the claimant's] mental impairment was ambiguous, or that he lacked sufficient evidence to render a decision, he relied heavily upon the testimony of [a non-examining psychological] medical expert," who's testimony was "equivocal." *Tonapetyan*, 242 F.3d at 1150. The court held that, because the ALJ relied on the expert's testimony, he "was not free to ignore [the non-examining

expert's] equivocations and his concerns over the lack of a complete record" and that the ALJ's failure to obtain a more detailed report constituted reversible error. *Id.* at 1150–51.

This case is analogous to *Tonapetyan*. The ALJ here assigned "significant weight" to the non-examining state agency consultants, including Megan Nicoloff, Psy.D., who reviewed the medical evidence of record on reconsideration. *See* Tr. 173–74; 422–34; 435–47. In fact, Dr. Nicoloff is the only "acceptable medical source" the ALJ's decisions mentions by name in the evaluation of medical evidence, and a review of her opinion reveals equivocation similar to the non-examining expert in *Tonapetyan*. Tr. 174.[7] One of the issues the doctor reviewed on reconsideration was whether Plaintiff's symptoms had changed "for better or worse . . . since last completing a disability report." Tr. 423, 436. Dr. Nicoloff found that "changes" to Plaintiff's symptomatology were "ongoing." Tr. 436 (capitalization deleted).

Given Dr. Nicoloff's equivocal statement regarding the erratic nature of Plaintiff's symptoms in February 2014, tr. 434, 447, coupled with the ALJ's "heightened" burden in light of Plaintiff's mental health symptoms, *see Tonapetyan*, 242 F.3d at 1150; *see also Hilliard v. Barnhart*, 442 F. Supp. 2d 813, 817 (N.D. Cal. 2006) (a "claimant need only 'raise a suspicion' about his impairment in order to trigger the ALJ's duty to develop the record") (citation omitted), I find the ALJ failed to adequately develop the medical record, *see Tonapetyan*, 242 F.3d at 1150. On remand, the record must be supplemented with a psychological consultative examination properly assess Plaintiff's mental health impairments.

## IV.   Step Five Finding and Remand

---

[7] I note that although the medical evidence of record contains opinion evidence from "other source" providers that the ALJ properly rejected, *see supra* at 4–10, it does not appear to contain a medical opinion from an "acceptable medical source" other than a 2013 GAF score assigned by David Sanchez, M.D., which the ALJ's decision fails to discuss. In other words, the ALJ's RFC was not based on any "acceptable medical sources" who actually treated or examined Plaintiff.

Finally, Plaintiff argues the Commissioner failed to meet her burden at step five to establish that he retains the ability to perform "other work" in the national economy. Pl.'s Op. Br. 17–18. At step five, the burden shifts to the Commissioner to demonstrate that although the claimant is unable to perform past relevant work, the claimant is still able to perform work that exists in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

As discussed above, the record in this case has not been fully developed. The ALJ erroneously rejected Plaintiff's testimony as well as failed to adequately develop the record regarding Plaintiff's mental health impairments. Thus, the RFC failed to properly account for all of Plaintiff's limitations. Consequently, the ALJ's step five finding was not supported by substantial evidence and remand is appropriate. *See Canfield v. Colvin*, No. 6:15-cv-00846-MC, 2016 WL 3566734, at *5 (D. Or. June 28, 2016) (remanding for further proceedings where "the record had not been fully developed" because the ALJ "did not properly consider" all of the evidence at step five).[8] Accordingly, I remand this matter on an open record for further administrative proceedings to: (1) accept Plaintiff's subjective symptom testimony or provide sufficient clear and convincing reasons for its rejection; (2) order a psychological consultative examination to evaluate Plaintiff's mental health limitations; (3) conduct a *de novo* review of all the medical evidence of record, including the results of the psychological consultative examination; (4) obtain additional VE testimony based on a reformulated RFC; and (5) conduct any further necessary proceedings.

## **CONCLUSION**

---

[8] Plaintiff does not meaningfully argue this case should be remanded for an immediate award of benefits under the Ninth Circuit's binding credit-as-true rule. *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). In any event, I find sufficient conflicts and ambiguities in the record making a remand for an immediate award of benefits inappropriate. *See Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1105–06 (9th Cir. 2014).

Page 17 – OPINION AND ORDER

For the reasons stated above, the Commissioner's final decision is REVERSED and this matter is REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this 6th day of March, 2018.

s/Michael J. McShane
Michael McShane
United States District Judge